Daniel DeFABIO, Sr., et al., Plaintiffs-Respondents,

v.

Marion MACKEY et al., Defendants, Marion Mackey et al., Defendants-Appellants.

No. 34517.

Missouri Court of Appeals, St. Louis District, Division Two.

March 27, 1973.

------

Lewis, Rice, Tucker, Allen & Chubb, Robert S. Allen, St. Louis, Schaper & Woods, Bowling Green, for plaintiffs-respondents.

Charles Clayton, St. Louis, for defendant.

Fazenda Mabrni, Ltd., Coburn, Croft, Shepherd & Herzog, G. Lane Roberts, Jr., St. Louis, Van Matre & Van Matre, Mexico, for defendants-appellants.

SMITH, Presiding Judge.

Defendants appeal from a judgment in a court tried case in favor of plaintiffs in the total amount of $125,000 [1] plus interest from April 21, 1967. Plaintiffs sought this recovery upon a theory of rescission based upon misrepresentations made to them by defendants prior to and during a purchase of approximately 527,000 acres of Brazilian land known as "Anta." We are considerably helped by an extensive and thorough opinion of the trial court and excellent briefs by both sides.

■ We review this matter de novo, giving deference to the opportunity of the trial court to judge the credibility of the witnesses and reverse only if the findings of the trial court are clearly erroneous.

In the early part of 1967, defendants Mackay, Bradley and Nichols [2] became interested in the purchase of land in Brazil. They admittedly formed a joint venture among themselves to purchase land in Brazil. Bradley, Mackey, Mackey's son and Nichols' son made a trip to Brazil for the purpose of investigating the possibilities of such purchase. While there they contacted a Brazilian real estate agent who indicated the availability of a tract in the State of Bahia, Brazil, comprising approximately 540,000 acres. Some negotiation took place and the agent advised the party that the entire tract would be available at thirty-three cents an acre. Smaller acreage in the same area was selling for $1.00 to $2.00 per acre. A "gentleman's agreement" was arrived at that defendants would let the agent know by April 1, 1967, whether they would purchase at this price. Although this agreement was referred to by defendants as an option it was oral and without monetary consideration. Defendants admitted it was handled in this fashion because neither side wanted to be bound. In legal contemplation this agreement was only an offer which could be withdrawn prior to acceptance by defendants.

Following the agent's offer the party returned to the Clarksville, Missouri area without having seen the land. Defendants borrowed $50,000 from the Kinderhook Bank in Kinderhook, Illinois. This money was deposited in the account of Marmac Realty Co.—d/o Brazil. Marmac is a Mackey controlled company. Ultimately this money was used to purchase a different tract of land in Brazil and none of it was expended for the purchase of Anta. Mackey was regarded generally and by plaintiffs particularly as a shrewd and successful business man with a capacity for money making investments. He was personally known to each of the plaintiffs.

------

1. The base amount of recovery for each plaintiff was: DeFabio—$50,000; Francis—$30,000; Fry—$15,000; Luke—$10,000; Naxera—$20,000.

2. These three will be referred to as defendants hereinafter.

As was to be expected, word of the Brazilian land venture got around in the Clarksville area. There is some dispute whether interest was solicited by defendants or whether plaintiffs took the lead in attempting to participate. On the record before us we think it is safe to say that defendants made no effort to keep the venture secret and did nothing to discourage investor interest in the project, and further that plaintiffs were not reluctant to participate in the prospective largess envisaged from this venture.

Following the initial trip and several conversations, discussions, and meetings each of the plaintiffs put up one-third of their eventual total commitment,[3] which was deposited in the Marmac Brazil account. Upon payment of this one-third each plaintiff received a receipt, which except for the name, amount and acreage were identical, as follows:

"Received of _____ of _____ $_____ for _____ undivided acres in a tract of land located in the State of Bahia in Brazil, South America, known as 'Anta.' This payment is for earnest money, the balance of $_____ will be due when title or deed is ready for transfer."

The total commitment for each plaintiff was $1 per acre. In total, commitments were obtained (other than from defendants) for one-third of the total acreage in the entire tract. After these commitments were obtained Bradley and Mackey returned to Brazil to complete the purchase of "Anta." Demand was made upon the plaintiffs and the other non-defendant investors to come up with their remaining balance, which after some additional conversation and meetings was done. This money, $170,000, was transferred to Brazil on March 27, 1967, and the purchase was consummated the next day. Deed was taken in the name of a corporation, Fazenda

Mabrni, Ltd., then in formation, and ultimately incorporated in Missouri. The total purchase price of the Anta tract (finally established at 527,345 acres) was $170,000. Plaintiffs and the other non-defendant investors were to have a one-third interest in the entire tract, defendants were to have a two-thirds interest. On April 15, 1967, all of the parties with an interest in Anta held a meeting for the purpose, at least in part, of setting up the structure under which the holding and development of Anta would proceed. During a discussion of capitalization Mackey denied that the land had cost a dollar an acre and refused to state how much it had cost. Plaintiffs for the first time became aware that the land had cost less per acre than their contributions but did not find out until discovery procedures in this suit the actual purchase price. Demand for rescission was made, refused and this suit followed. From the above recitation it is apparent that plaintiffs (and other non-joined investors) furnished the entire purchase price for Anta and received a one-third interest therein. Defendants contributed none of the purchase price and received a two-thirds interest. It is clear that none of the plaintiffs had been misled as to Mackey's business acumen.

Defendants contend that while, as between themselves, they were joint venturers, their transaction with plaintiffs was simply a purchase by plaintiffs of land from defendants and that no obligation to disclose the price at which they purchased the land existed. They find support for this position predominantly in the receipt (heretofore set out) given by defendants to plaintiffs at the time the original one-third was paid by plaintiffs. Plaintiffs seek to avoid pigeonholing the transaction and urge instead that defendants occupied a fiduciary relationship to plaintiffs which imposed an absolute obligation of disclosure. Essentially their theory is bottomed upon joint venture although they also advance a

---

3. Naxera originally committed for $15,000 total, but subsequently increased his investment to $20,000.

joint purchase and principal-agent relationship.

■ Joint venture is an association of two or more persons to carry out a single business enterprise for profit, for which purpose they combine their property, money, effects, skill and knowledge. "It can arise only by contract or agreement between the parties . . . But the joint adventure may be established without any specific formal agreement to enter into a joint enterprise; it may be implied or proven by facts and circumstances showing such enterprise was in fact entered into . . ." Jeff-Cole Quarries, Inc. v. Bell, 454 S.W.2d 5[9] (Mo.1970).

■ If a joint venture has been entered into then each joint venturer occupies a fiduciary relationship to each of his co-venturers. This relationship carries with it an absolute, affirmative duty to disclose all pertinent information pertaining to the joint venture to the other members of the venture. Seehorn v. Hall, 130 Mo. 257, 32 S.W. 643 (1895). It is clear and admitted that Mackey, Nichols and Bradley did not disclose the true purchase price of Anta to plaintiffs. In fact the evidence warrants the conclusion that they affirmatively led plaintiffs to believe that the cost of Anta was $1.00 per acre.

■ The elements of joint venture are an intent to create the arrangement, participation by the parties in the object of the venture, and the right to control the property or assets of the venture. Scott v. Kempland, 264 S.W.2d 349 (Mo.1954). Despite defendants' protestations that their dealings with plaintiffs were as sellers-buyers, we find the evidence supports a conclusion that a joint venture was created.

■ We note initially, that the purchase of the property was never made by defendants. Upon the initial receipt of plaintiffs' money (plus that of other non-joined investors) no binding obligation had been made by defendants for the purchase of Anta. It is not completely clear whether a binding contract was entered into prior to the final payments by plaintiffs and transmission of the money to Brazil. There was evidence that a contract to purchase Anta was executed on March 17, but it provided for $70,000 payable upon signing of the contract and the record is clear that no money was paid until March 28, when the entire $170,000 was paid to the seller and his agents. The document transferring ownership was from the seller to Fazenda Mabrni, Ltd., the incipient corporation in which all investors plus the defendants were to have a stock interest. The receipt given to the plaintiffs by defendants did utilize the term "earnest money" which is frequently, but not exclusively, used in purchase-sale transactions. We note, however, that it also contained reference to "undivided acres" which is quite consistent with a joint venture or joint ownership of land. Normally, earnest money contracts where land is purchased constitute a binding contract for the purchase and sale of the property when the money is accepted by the seller. Here defendants were legally incapable of binding themselves to sell Anta or any portion of it to plaintiffs when they accepted plaintiffs' money and issued the receipt for at that time they neither owned the land nor had any binding contract to acquire it. In that posture the receipt serves only as that, a receipt, for the initial payment by plaintiffs of their share of the total purchase price for Anta.

On at least one occasion prior to the purchase of the land and once after, the investors or a large portion of them met as a group to discuss the purchase and development of the tract. All of the investors were aware of each of these meetings. At various times before and after the purchase, discussion was had between one or more defendants and one or more plaintiffs concerning the eventual development of Anta by the group, probably through the use of a corporation. Mackey discussed with one or more plaintiffs the possibility

of the corporation selling off some of the land after acquisition to raise capital to improve and develop Anta. At various times before the transaction one or more plaintiffs inquired of Mackey about the sharing of expenses and Mackey stated that if there were any expenses not absorbed by the seller they could or would be prorated. Mackey consistently stated on several occasions that he had his own money in the venture; that he, Nichols and Bradley had $100,000 apiece in the venture; that they needed additional investors in order "to swing the deal;" that he needed to "spin-off" some of the interest to complete the deal; that he needed "associates to swing the deal." Nor should we ignore the fact that the land purchased was in a foreign country, in a remote section of that country, and that most if not all of the plaintiffs had neither the inclination nor the background to attempt development of a portion of the land for farming, its major prospective use. It was as to all plaintiffs an investment in a large tract of land to be acquired and developed by the group.

At a meeting just before closing plaintiffs were advised that their remaining commitment money was necessary to "complete the purchase." A statement was furnished at that meeting to Mackey by plaintiff Fry's son showing the additional money required from all investors including Mackey, Nichols and Bradley.

Nor in determining the intent of the parties are we required to ignore the fact that none of the defendants reported any profit from the sale of land on their 1967 income tax returns, a fact which was never explained if in fact they viewed the transaction as a sale to plaintiffs.

We will not attempt here to detail all the evidence and testimony in this 700 page record. Considering it all we are left with the inescapable conclusion that all parties throughout this transaction viewed it as, and intended it to be, a joint venture for the acquisition and development of Anta.

In reaching this conclusion we have not ignored the evidence of defendants. At most it indicates that they did not consider or intend the transaction to be a joint venture. We do not believe the evidence warrants such a finding, but even if it does, plaintiffs are still entitled to the relief granted. If defendants in fact did not intend a joint venture, they nonetheless through their actions and statements misled the plaintiffs to believe that plaintiffs were investing as joint venturers and plaintiffs made their investments in reliance upon that belief. Rescission is proper where a contract is procured by misrepresentations. Hostler v. Holland Furnace Company, 327 S.W.2d 532 (Mo.App.1959).

Having found a joint venture existed, defendants who were admittedly acting together, owed an absolute duty of disclosure of the cost of the land to plaintiffs which they admittedly did not make. We, therefore, need not discuss defendants' contention that each plaintiff was required to prove an actionable misrepresentation. We do note, however, that each of the plaintiffs testified to some occasion on which Mackey made representations of the joint venture nature of the overall transaction.

We also deem without merit defendants' contention that plaintiffs may not rescind the transaction without joining the seller of the land. This contention mistakes the transaction which plaintiffs are attempting to rescind. They do not seek to undo the land purchase, but to undo their contractual relationship with defendants which was the product of defendants' failure to disclose the true facts of the joint venture.

Judgment affirmed.

SIMEONE and KELLY, JJ., concur.